## Case No. 13,166.

### In re SOLOMON.

[2 Hughes. 164; ¹ 10 N. B. R. 9; 3 Am. Law Rec. 226: 1 Am. Law T. Rep. (N. S.) 351.]

Circuit Court. E. D. Virginia. June, 1874.

HOMESTEAD—WAIVER—CONSTITUTIONAL LAW—BANKRUPTCY.

Under those provisions of the constitution of Virginia which allow a homestead exemption to any householder or head of a family, and of the act of assembly which prescribes in what manner and under what conditions the exemption may be set apart and held. it is competent for a claimant to waive his right to the exemption. that provision of the act of assembly on the subject which allows a waiver being constitutional.

For contrary view of a state court, see [Thomas v. M'Cahan] 1 Va. Law J. March, 1877, p. 187.

[Cited in Linkenhoker v. Detrick. 81 Va. 52. Cited in brief in White v. Owen. 30 Grat. 53.]

¹ [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

[In review of the action of the district court of the United States for the Eastern district of Virginia.

[In the matter of Joseph Solomon, a bankrupt.]

R. Courtney, for bankrupt.
John Dunlop, for creditors.

WAITE, Circuit Justice. On the 31st January, 1873, the bankrupt executed to Glazebrook & Thomas, at Richmond, Va., his note for the payment to them, or their order, of the sum of $234.50 at sixty days after date. It contained the following clause: "I hereby waive the benefit of the homestead exemption as to this debt." Glazebrook & Thomas indorsed this note to Gibson & Crilly. Solomon was adjudged a bankrupt, on his own petition, upon the 1st of May, 1873. Gibson & Crilly made proof of their claim against the estate on the 24th May. An assignee was appointed, who on the 16th of February, 1874, set off to the bankrupt his homestead exemption under the laws of Virginia, without regard to the waiver expressed in the note of Gibson & Crilly. They thereupon filed their petition in the district court, the object of which was to set aside this action of the assignee, so far as it operated to prevent their subjecting the property set off to the payment of their debt in case the remainder of the bankrupt's estate should prove insufficient for that purpose. Their claim for this relief is predicated entirely upon the waiver of the exemption which is contained in their note. We are therefore called upon to consider the effect of this waiver.

By section 1, art. 11, of the constitution it is provided that every householder or head of a family shall be entitled to hold exempt from levy, etc., property to the value of not exceeding $2,000, to be selected by him; by section 3 it is further provided that nothing in the article should be construed to interfere with the sale of property exempted, or any portion thereof, by virtue of any mortgage, deed of trust, pledge, or other security thereon, and by section 5, that the general assembly should at its first session under the constitution prescribe in what manner and on what conditions the said householder or head of a family should thereafter set apart and hold for himself and family a homestead out of the property thereby exempted, and might, in its discretion, determine in what manner and on what conditions he might thereafter hold for the benefit of himself and family such personal property as he might have, and coming within the exemption thereby made, but that said section should not be construed as authorizing the general assembly to defeat or impair the benefits intended to be conferred by the provisions of this article. By section 7 it was provided that the provisions of the article should be construed liberally, to the end that all the intents thereof might be fully and properly carried out. In

June, 1870 [Laws Va. 1869-70, p. 198], the general assembly passed an act such as was required by section 5, and its third section provided that in all cases where a debtor or contractor shall declare in the body of the bond, note, or other evidence of the debt or contract that he waives as to such debt or contract the exemption from liability of the property which he may be entitled to hold under the provisions of said act, the property whether previously set apart or not, should then be liable to be subjected for such debt or contract under legal process in like manner and to the same extent as other estate of the said debtor or contractor; provided, that when such debtor or contractor is possessed of other estate than that which he may be entitled to hold exempt in the county in which suit is brought against him, or the property set apart under the provisions of this act may be, then such other estate shall be subjected and exhausted before that which is exempt can be sold. The words employed in the note held by Gibson & Crilly are declared by the act to be sufficient to operate as such waiver. If this provision of the act is constitutional the waiver can be enforced.

Every statute is presumed to be constitutional. It cannot be declared by the courts to be otherwise, unless it is made clearly so to appear. If the case is doubtful the expressed will of the legislature should be sustained. Keeping these familiar principles in mind, we proceed to consider the constitutionality of the act in question. The constitution grants the exemption as a privilege to the householder. It declares that he shall be entitled to hold property to be selected by him. No specific property is set apart, but he can select such as he desires to have, and when selected it is to be set apart. If he fails to select, the process of the law can be executed, and the sale made. The right of selection must be exercised before the sale. If the householder fails in this, his right of exemption in the property sold is gone. The privilege, so far as it is given by the constitution, is personal to the householder. The language is, "to be selected by him." If he neglects to act, no one is authorized by the constitution to act in his place. The case is entirely different from what it would have been if it had been declared that certain specific property should not be sold under execution, etc. In that case the constitution or a law containing similar provisions would execute itself, and as it would be a part of the public policy of the government to exempt that particular property absolutely from forced sale, its provisions could not be waived. It would be beyond the legal power of an officer to levy upon and sell such property. Here, however, the policy is not to exempt absolutely, but the householder has a right to claim an exemption. Whether he will make his claim or not is optional with him. If he does not claim, he cannot have; and it is difficult to see why, if he may waive at the time of the sale by refusing to select,

he may not before. If he can waive at all, it seems to us it follows necessarily that for a good consideration he may make a contract to waive such as the courts will enforce.

But it is further provided that nothing in the article of the constitution referred to should be construed to interfere with the sale of the property or any portion of it by virtue of any mortgage, deed of trust, pledge, or other security thereon. Thus it is made expressly to appear that it was not the intention of the framers of the constitution to prevent the householder from contracting for the sale or incumbrance of the property. He was not required to hold it absolutely for himself and family. It was to remain entirely under his personal control, to be dealt with in such manner as he saw fit. His right to sell and incumber is as distinctly given as his right to select. If he sells or incumbers before he selects, his power of selection as against such sale or incumbrance is gone. No particular form of incumbrance is specified—that is left to the discretion of the legislature. Now, a waiver of the right to select is, in effect, an incumbrance on the property which might be selected. True, in the absence of a statutory provision to that effect, one cannot ordinarily mortgage or otherwise incumber his future to be acquired property, but it is no doubt within the power of the legislature to authorize him to do so. If it does, his incumbrance upon such property is binding, the same as upon any other.

The legislature of Virginia has in this case attempted in effect to authorize a householder to incumber in a particular manner his exemption interest in his property, as well that which he has acquired as that which he may acquire. It seems to us that in so doing it has not in any manner impaired the benefits which it was the object of the constitution to confer. The object was to give the householder full power and control over his property; to permit him to use it in such manner as in his judgment would best promote the interest of himself and his family, and if he had not by some voluntary act of his own deprived himself of the right, to allow him to select and hold a certain specified amount, not description, of property free from the process of the law to enforce the payment of his debts. The amount thus exempted was large, in many instances. no doubt, more than the value of all the property the debtor owned. Unless he could in some form make this property available for the purposes of security he and his family might not unfrequently be reduced to want. A mortgage, or pledge, or deed of trust. might not always furnish the security required. Take.the facts of this very case as an example. The bankrupt appears to have been a merchant, and purchased his goods on credit. One of the classes of property which he wishes set off to him consists of his stock of goods remaining on hand. So far as appears from the papers submitted to us, his whole unincumbered property will

not be sufficient to give him the full amount which the constitution would permit him to hold. The note of these creditors was given for goods purchased on credit to keep up his stock. Unless, therefore, he could in some manner give security upon his exempted property, it is fair to presume he could not have obtained his credit. A mortgage upon property held for sale would be precarious security, if valid at all, as against creditors, and a pledge would be inconsistent with the retention of the possession by the owner for the purpose of sale. The only real security that could be given in such a case would be by a waiver of the right of exemption in favor of that particular debt. This the legislature has authorized the debtor to make, and we think in so doing it acted within the scope of its constitutional powers. Whether such a waiver could be enforced without legislative authority for making it, we are not called upon now to consider. It is sufficient for this case that this authority has been given.

The judgment of the district court that the provisions of the act allowing a waiver of the exemption are unconstitutional is reversed, and the court is directed to proceed to hear and determine the cause upon the other issues made by the pleadings.